QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Marshall M. Searcy III (Bar No. 169269)
  marshallsearcy@quinnemanuel.com
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Attorneys for Defendant Pfizer Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEFINA ALLISON, an individual; LORETTA BUSH, an individual; DOROTHY CALDWELL, an individual; LORI CANORRO, an individual; SANDRA CARDINAL, an individual; JUDITH CASKEY, an individual; PATTI LEE CAUDLE, an individual; CAROLINE COLE, an individual; CAROLYN COON, an individual; DELORIS DAVIS, an individual; DONNA DAVIS, an individual; WILLIE MAE DAVIS-WILLIAMS, an individual; ANNA DIXON, an individual; CAROLYN DIXON, an individual; DEBBIE DUNN, an individual; BRENDA EDWARDS, an individual; BENEDICTA ESPANOL, an individual; AURORA ESTRELLA, an individual; TERESA FORD, an individual; JOYCE FULLER, an individual; MARIA GARCIA, an individual; GLADYS JEANETTE GARNER, an individual; PATRICIA | CASE NO.:  2:16-cv-8721<br><br>NOTICE OF REMOVAL |

GARRETT, an individual; LINDA
GRAY, an individual; SHARON
GROVER, an individual; TERESSA
HAINES, an individual; LISA
HEGAZY, an individual; JACKIE
HILL, an individual; MARILYN HILL,
an individual; CHRISTINE HINKLE,
an individual; MARGARET HOCKER,
an individual; BARBARA HOPES, an
individual; BARBARA LEE
HUGHES, an individual; JO HUGHES,
an individual; SABRINA SUE
JOHNSON, an individual; GENEVA
JONES, an individual; MELISSA
JONES, an individual; BARBARA
KALEMBER, an individual; ELAINE
L. KEY, an individual; ALISCINA
LEACH, an individual; BETTY
LEYBA, an individual; LINDA
LINAN, an individual; SHEILA
MARTIN, an individual; KATIE
MAYE, an individual; EDNA
MERRILL, an individual; KAREN
MIZE, an individual; MARY ANN
MOORE, an individual; ADRENA
MUHAMMAD, an individual;
ANDREA NEWTON, an individual;
MARILYN OYLER, an individual;
RHODA PADILLA, an individual;
PUSHPA PATEL, an individual;
ELIZABETH PAXTON, an individual;
DEBORAH PEÑA, an individual;
DORIS PERRY, an individual;
KRISTIN PETZOLD, an individual;
IDA PIZZI, an individual;
GWENDOLYN REED, an individual;
DORA SABEDRA CHAVIRA, an
individual; MARY SEABAUGH, an
individual; ORA SHERRELL, an
individual; JOYCE SHIELDS, an
individual; OPHELIA

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

SHILLINGFORD, an individual;
GLORIA SIESS, an individual; ROSE
SINCLAIR, an individual; NANCY
SMITH, an individual; MARY
TOLENTINO, an individual;
PATRICIA TROTMAN, an individual;
BRENDA VOTTA, an individual;
ROBERTA WASHINGTON, an
individual; LINDA WHITE, an
individual; TRESSIA WILKERSON,
an individual; LINDA WOOLEY, an
individual; SHAYNE ZEPEDA, an
individual,

            Plaintiffs,

    v.

PFIZER INC., MCKESSON
CORPORATION, and DOES 1-50,

            Defendants.

      Defendant Pfizer Inc. ("Pfizer"), by its undersigned attorneys, hereby gives notice of the removal of this action, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, to the United States District Court for the Central District of California.  As grounds for removal, Pfizer states as follows:

## BACKGROUND

      1.    In this action filed in California Superior Court on October 28, 2016, Plaintiffs, who are 74 unrelated individuals, allege that they developed type II diabetes as a result of their use of Lipitor, a prescription medication approved by the FDA to lower cholesterol and for other indications.  (*See, e.g.*, Compl. ¶ 1 (attached as Ex. A).)[1]  Plaintiffs assert their claims against Pfizer, the manufacturer of Lipitor,

---

[1]   All Exhibits are attached to the supporting Declaration of Marshall Searcy III.

and a single alleged distributor of Lipitor, the California-based McKesson Corp. ("McKesson").

2. On September 27, 2013, an amended petition for coordination was filed with the California Judicial Council under California Code of Civil Procedure § 404.1 seeking the coordination before "[o]ne judge . . . for all purposes" of all California state-court actions alleging similar personal injuries from Lipitor, which, at the time, consisted of 8 actions involving 21 plaintiffs. (Am. Pet. for Coord. at 6-7 (the "Petition" or "Am. Pet.," attached as Ex. B) (quoting Cal. Code Civ. Proc. § 404.1).) The Petition stated that the Lipitor actions satisfied "the criteria codified" in section 404.1, citing the presence of "common questions of fact or law" and the need to avoid "duplicative and inconsistent rulings, orders or judgments." (*See id.*)

3. The Declaration submitted in support of coordination, as well as additional responses submitted by Plaintiffs in support of coordination, similarly emphasized the presence of common questions of law and fact and the desire to avoid inconsistent judgments:

- "The included actions require resolution of similar or even identical factual and legal issues . . . . Coordination will avoid the disadvantages of duplicative and potentially inconsistent rulings, orders, and judgments." (Zukin Supp. Decl. (attached as Ex. C) ¶ 8.)

- "The actions identified in the Amended Petition all involve significant common questions of law and fact." (Parker Resp. (attached as Ex. D) at 4; Kiesel Resp. (attached as Ex. E) at 4.)

- "Failure to coordinate the cases identified in the Amended Petition would result in the disadvantages of duplicative and potentially inconsistent rulings orders, and judgments. Common issues should be adjudicated in a single proceeding in front of a single judge, with any appeals lying before the same Court of Appeal." (Parker Resp. at 6; Kiesel Resp. at 6.)

4. In addition, both the Petition and its supporting responses contemplated the filing of additional actions to be coordinated:

- "Petitioners' counsel is informed and believes that additional LIPITOR® injury cases will be filed within the next weeks." (Am. Pet. at 7.)

- "[I]t is very likely that additional cases will be filed in California." (Parker Resp. at 6; Kiesel Resp. at 6; Alanis Resp. (attached as Ex. F) at 4.)

- "Kiesel + Larson LLP anticipates filing numerous additional cases against the same defendants, and I believe these additional cases will be filed in the next 45 days." (Zukin Supp. Decl. ¶ 4.)

- "I anticipate that, within the next several months, hundreds of additional cases alleging similar injuries arising out of ingestion of Lipitor will be filed in California courts." (Zukin Supp. Decl. ¶ 6.)

5.    On January 28, 2014, 4 California Lipitor cases involving 7 plaintiffs were coordinated in Los Angeles County Superior Court before Hon. Jane L. Johnson pursuant to California Code of Civil Procedure § 404.1 as JCCP No. 4761 (the "California Lipitor Coordination").

6.    In connection with a status conference held on February 25, 2014, in the California Lipitor Coordination, the Plaintiffs' counsel who filed the Petition proffered to Pfizer a list of additional California Lipitor cases proposed to be added to the coordinated proceeding.  (Table of Cases (attached as Ex. G).)  During the conference, Plaintiffs' counsel referred to these cases as proposed to be included in the California Lipitor Coordination.[2]  Pfizer began to be served in these cases around that time, and as of February 20, 2014, Pfizer had been served in cases embracing claims by more than 100 plaintiffs in total.  Together, all Lipitor cases coordinated or proposed to be coordinated embraced the claims of more than 3000 plaintiffs.

7.    Moreover, on March 3, 2014, Plaintiffs' leadership in the California Lipitor Coordination submitted a proposed order stating that "all cases filed in

---

[2]  During the conference, the coordination judge also approved an order appointing certain firms to Plaintiffs' leadership in the California Lipitor Coordination.  (*See* Order (attached as Ex. H).)

California state court against Pfizer, Inc. . . . alleging injuries related to the development of Type II diabetes . . . arising from the ingestion of Lipitor® are assigned to the Honorable  Jane L. Johnson, Los Angeles Superior Court for purposes of coordination," and streamlining procedures for coordination.  (Proposed Amended Order re Add-On Procedures (attached as Ex. I).) This proposed order confirmed Plaintiffs' proposal that all Lipitor cases filed in California be coordinated pursuant to California Code of Civil Procedure § 404.1.

8.    These events created a removable "mass action" under the Class Action Fairness Act (CAFA) consisting of the California Lipitor Coordination and the cases proposed to be added (together, the "Subject Cases"), because it proposed that the monetary relief claims of more than 100 plaintiffs be tried jointly on the ground that they present common questions of law or fact.  In addition, subject matter jurisdiction is proper in this case under traditional diversity jurisdiction because McKesson is fraudulently joined.

9.    Following removal, Pfizer will identify this action, as it has all previously filed Subject Cases, to the JPML as suitable for transfer to the Lipitor MDL pending in the District of South Carolina.  *See* J.P.M.L. Rule 6.2(d).  Pfizer also intends to move to stay this case pending the JPML's decision regarding transfer to the Lipitor MDL, where, as numerous courts have held, common jurisdictional and substantive issues can be resolved on an efficient and consistent basis.[3]

---

[3]   *See J.W. v. Pfizer, Inc.*, 2013 WL 1402962, at *4 (N.D. Cal. Apr. 5, 2013) (granting Pfizer's motion to stay pending transfer to the Zoloft MDL "[i]n light of the value of consistent rulings and efficient consideration of common issues"); *Beatty v. Merck & Co.*, 2006 WL 2943090, at *1 (E.D. Cal. Oct. 13, 2006) ("Given the number of cases that present this exact jurisdictional question[,] . . . the interest of judicial economy favors staying this action pending its transfer to the MDL proceeding."); *Bledsoe v. Janssen Pharmaceutica*, 2006 U.S. Dist. LEXIS 5524, at *3 (E.D. Mo. Feb. 13, 2006) ("[J]udicial economy weighs heavily in favor of granting the requested stay . .

*(cont'd)*

## GROUNDS FOR REMOVAL

## I.    THIS CASE IS REMOVABLE UNDER CAFA'S MASS ACTION PROVISIONS

10.    This case is removable pursuant to the mass action provisions of CAFA, enacted within the diversity jurisdiction statute at 28 U.S.C. § 1332(d)(11).   An action is removable as a mass action where it meets the following requirements:

a.    It involves the monetary relief claims of 100 or more persons that are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, *see id.* § 1332(d)(11)(B)(i);

b.    The aggregate amount in controversy exceeds $5,000,000 and the claims of the individual plaintiffs each exceed the amount of $75,000, *see id.* §§ 1332(a), (d)(2), (d)(11)(B)(i); and

c.    Any plaintiff is a citizen of a State different from any defendant, *see id.* § 1332(d)(2)(A).

11.    As set forth below, this action and the other Subject Cases satisfy all the jurisdictional requirements for a mass action.   In addition, Pfizer has satisfied all procedural requirements for removal of a mass action pursuant to 28 U.S.C. §§ 1446 and 1453.   Accordingly, mass action removal is proper.

---

*(cont'd from previous page)*

. [which] will conserve judicial resources because only one court will need to make [pretrial] rulings.").   Indeed, the transferee judge, the Hon. Richard M. Gergel, has already addressed remand motions in other similar cases removed from California state court, suggesting to the JPML that those cases be remanded to the California federal transferor courts.   Case Management Order 87, Dkt. 1726, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 2:14-mn-2502 (D.S.C. Nov. 11, 2016).   Judge Gergel is also now reviewing rulings of the magistrate judge on motions to remand filed in other California Lipitor actions.   *See, e.g.,* Defs. Pfizer Inc. and Greenstone LLC's Obj. to Magistrate Judge's Suggestion of Remand, Dkt. 1593, *In re Lipitor (Atorvastatin Calcium) Mktg., Sales Practices and Prods. Liab. Litig.*, 2:14-mn-2502 (D.S.C. July 28, 2016).

### A.    Plaintiffs Proposed That the Claims of More Than 100 Persons Be Tried Jointly

12.    The Subject Cases are removable as a mass action because the proposal to join more than 3000 plaintiffs in the California Lipitor Coordination constituted a proposal to try the claims of those plaintiffs jointly.  The Ninth Circuit recently issued an *en banc* decision in *Corber v. Xanodyne Pharmaceuticals, Inc.*, 771 F.3d 1218 (9th Cir. 2014), where it recognized mass action jurisdiction in indistinguishable circumstances.

13.    *Corber* involved *en banc* review of a panel decision of the Ninth Circuit that rejected CAFA mass action jurisdiction over a group of pharmaceutical products liability cases proposed to be coordinated in California state court.  The *en banc* court reversed the panel and held 9-2 that the "Plaintiffs' petitions to coordinate actions under California Code of Civil Procedure section 404 constitute proposals for these actions to be tried jointly, making the actions a 'mass action' subject to federal jurisdiction under CAFA."  *Id.* at 1222.  The *en banc* court held that there were two reasons that the petition for coordination constituted a proposal for joint trial, both of which are indistinguishable from the cases now before the Court: (1) the plaintiffs had requested coordination "for all purposes," which "must include the purposes of trial"; and (2) the plaintiffs had requested relief that could not be granted apart from a joint trial, specifically, "the danger of inconsistent judgments and conflicting determinations of liability."  *Id.* at 1223-24.

14.    Here, as in *Corber*, the proposed addition of the new actions to the California Lipitor Coordination under California Code of Civil Procedure § 404.1 presents the same two key factors that the Ninth Circuit held constituted a request for actions to be tried jointly.

15.    First, just like the *Corber* plaintiffs' request to coordinate "for all purposes," Plaintiffs here proposed coordination before "[o]ne judge . . . for all purposes."  (Am. Pet. at 6-7.)  This is significant because the authority of a

coordination judge under California procedure is plenary, and embraces coordination for trial. Indeed, California's Rules of Court presume trial by the coordination judge, who is "assigned . . . to hear and determine coordinated actions," Cal. R. Ct. 3.501(9), and "*must* assume an active role in managing all steps of the pretrial, discovery, *and trial* proceedings." *Id.* 3.541(b) (emphasis added); *see also id.* 3.541(b)(3) (providing coordination judge discretion to "[o]rder any issue or defense to be tried separately and before trial of the remaining issues"). Plaintiffs who have supported coordination of the Lipitor actions in California state court made clear that they seek trial by the coordination judge, contending that "[c]ommon issues should be adjudicated in a single proceeding in front of a single judge, *with any appeals lying before the same Court of Appeal*." (Parker Resp. at 6 (emphasis added); *accord* Kiesel Resp. at 6.)

16. Second, like the *Corber* plaintiffs, Plaintiffs here have requested coordination to avoid "duplicative and inconsistent rulings, orders or judgments." (*See* Am. Pet. at 6-7.) The petitioning plaintiffs likewise averred that "[t]he included actions require resolution of similar or even identical factual and legal issues" and that "[c]oordination will avoid the disadvantages of duplicative and potentially inconsistent rulings, orders, and judgments." (Zukin Supp. Decl. ¶ 8.) Plaintiffs who supported the Petition similarly argued that "[f]ailure to coordinate the cases identified in the Amended Petition would result in the disadvantages of duplicative and potentially inconsistent rulings orders, and judgments." (Parker Resp. at 6; *accord* Kiesel Resp. at 6.) That this desire to avoid inconsistent judgments contemplates matters for trial is apparent from the common issues as to which the plaintiffs have sought joint determination, almost all of which are matters that can be decided in plaintiffs' favor *only* at trial. As in *Corber*, these matters as to which plaintiffs sought to avoid inconsistent judgments are matters that necessarily require a trial, including, for example, "[w]hether the Plaintiffs are entitled to compensatory

1  damages and/or restitution," and "[w]hether the Defendants are liable for punitive or

2  exemplary damages, a matter to determined when appropriate."  (Parker Resp. at 4.)

3  It is thus "difficult to see how a trial court could consolidate the cases as requested

4  by plaintiffs and not hold a joint trial," *In re Abbott Labs., Inc.*, 698 F.3d 568, 573

5  (7th Cir. 2012), and these claims have been proposed to be tried jointly.

6      17.    This case is subject to these proposals for coordination.[4]  Indeed, in the

7  civil cover sheet for the filing of this action, Plaintiffs' counsel indicated that this

8  case was complex because it was subject to transfer to a coordinated proceeding.

9  (Civil Cover Sheet (attached within Exhibit A).)  Plaintiffs also filed a Notice of

10 Related Case, stating that this case is related to the California Lipitor Coordination.

11 (Notice of Related Case (attached within Exhibit A).)    Moreover, Plaintiffs'

12 leadership in the California Lipitor Coordination submitted a proposed order stating

13 that "all cases filed in California state court against Pfizer, Inc. . . . alleging injuries

14 related to the development of Type II diabetes . . . arising from the ingestion of

15 Lipitor® are assigned to the Honorable  Jane L. Johnson, Los Angeles Superior

16 Court for purposes of coordination," making the proposed inclusion of this case in

17 the California Lipitor Coordination unmistakable.  (Proposed Amended Order re

18 Add-On Procedures.)

19     18.    In addition, two other courts of appeal have held that a state-court

20 request to transfer separate cases for plenary proceedings before a single judge

21 renders those cases a "mass action" where, as here, the coordination petition

22 requests relief that, if granted, would require the individual actions to be tried jointly.

23 *In re Abbott Labs., Inc.*, 698 F.3d 568 (7th Cir. 2012); *Atwell v. Boston Scientific*

24

25 [4]    While a mass action does not result where individual actions are joined "upon motion of a defendant," 28 U.S.C. 1332(d)(11)(B)(ii)(II); *Tanoh v. Dow Chem. Co.*,

26 561 F.3d 945, 953 (9th Cir. 2009); *Anderson v. Bayer Corp.*, 610 F.3d 390, 393 (7th

27 Cir. 2010), there is no such barrier where, as here, the proposal to try actions jointly originates with plaintiffs.

28

*Corp.*, 740 F.3d 1160 (8th Cir. 2013).[5]  These decisions provide further support for mass action jurisdiction in this case.

19.    Accordingly, Plaintiffs have proposed that the Subject Cases, which embrace the monetary relief claims of more than 100 plaintiffs, be tried jointly, and the first requirement of mass action removal is satisfied.

## B.    The Amount in Controversy Is Satisfied

20.    Both the individual $75,000 and aggregate $5,000,000 amount in

_____

[5]  In *Abbott*, the Seventh Circuit held that a proposal giving rise to mass action jurisdiction need not specifically request actions to be tried jointly because "a proposal for a joint trial can be implicit."  698 F.3d at 572; *see also Bullard v. Burlington N. Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008); *Koral v. Boeing Co.,* 628 F.3d 945, 947 (7th Cir. 2011).  The Seventh Circuit found that the plaintiffs implicitly requested the actions to be tried jointly because they sought consolidation "'through trial' and "'not solely for pretrial proceedings'" and asserted that consolidation "through trial 'would also facilitate the efficient disposition of a number of universal and fundamental substantive questions applicable to all or most Plaintiffs' cases *without the risk of inconsistent adjudication* in those issues between various courts.'"  *Abbott*, 698 F.3d at 573 (citation omitted).  The court observed that, because "a joint trial does not have to encompass relief," either "a trial on liability" only or a trial of "'exemplary plaintiffs, followed by application of issue or claim preclusion'" as to over 100 other plaintiffs would constitute a proposal that the actions be tried jointly.  *Id.* (citation omitted).  The Seventh Circuit concluded that "it is difficult to see how a trial court could consolidate the cases as requested by plaintiffs and not hold a joint trial or an exemplar trial with the legal issues applied to the remaining cases," and "[i]n either situation, plaintiffs' claims would be tried jointly."  *Id.* The Eighth Circuit also recognized mass action jurisdiction in *Atwell*, a medical device products liability case, where plaintiffs in three separate Missouri state court actions of less than 100 plaintiffs each moved to transfer their cases "to a single Judge for purposes of discovery and trial."  740 F.3d at 1163.  Although the plaintiffs had initially attempted to limit their transfer request to pre-trial proceedings, the Eighth Circuit found that they had proposed the actions be tried jointly by urging transfer "to a single judge who could 'handle these cases for consistency of rulings, judicial economy, [and] administration of justice,'" and explaining that they wanted the proceeding "''assigned to the judge that's going to try the case.'"  *Id.* at 1164-65.

controversy requirements for mass action removal are readily satisfied.  *See* 28 U.S.C. §§ 1332(a), (d)(2), (d)(1l)(B)(i).[6]

21.  First, it is apparent from the face of the Complaint, and the serious nature of the injuries alleged by each Plaintiff, that the amount in controversy exceeds $75,000 for each Plaintiff, just as it is for the claims in the other actions embraced by the California Lipitor Coordination.  Plaintiffs claim to have developed type II diabetes, a chronic condition, due to Lipitor, and "[a]s a result, for the rest of their lives they must undergo regular testing of their blood glucose levels, adhere to a restrictive diabetic diet, and take medication to control their diabetes[.]  [D]ue to their diabetes, they are now at a markedly increased risk of heart disease, blindness, neuropathy, and kidney disease."  (Compl. ¶ 116.)

22.  Where, as here, Plaintiffs allege serious bodily injuries, courts have readily found that the amount-in-controversy requirement is satisfied.  *See In re Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d 272, 296 (S.D.N.Y. 2001).  In addition, compensatory and punitive damages in excess of the jurisdictional amount of $75,000 have been awarded in products liability cases in California.  *See, e.g.*, *Stewart v. Union Carbide Corp.*, 117 Cal. Rptr. 3d 791, 804 (Cal. Ct. App. 2010); *Karlsson v. Ford Motor Co.*, 45 Cal. Rptr. 3d 265, 282-83 (Cal. Ct. App. 2006); *Jones v. John Crane, Inc.*, 35 Cal. Rptr. 3d 144, 161 (Cal Ct. App. 2005).  Other federal courts have thus concluded that the amount in controversy exceeded $75,000 in similar pharmaceutical cases.  *See, e.g.*, *Smith v. Wyeth Inc.*, 488 F. Supp. 2d 625, 630-31 (W.D. Ky. 2007) (denying motion to remand); *accord Copley v. Wyeth, Inc.*, 2009 WL 1089663, at *2-3 (E.D. Pa. Apr. 22, 2009).  In addition, because Plaintiffs' demands for punitive damages are also included in the amount in controversy, *see Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007), it is evident,

---

[6]  Pfizer does not, however, concede that Plaintiffs would be entitled to any of the relief sought in the Complaint.

from the face of the Complaint that the amount of recovery sought by each Plaintiff exceeds $75,000.

23.    Second, because each individual Plaintiff's claim exceeds $75,000, the aggregate amount in controversy for this mass action, which embraces the claims of more than 3000 individual plaintiffs, necessarily exceeds $5,000,000, since $75,000 multiplied by 3000 is $225,000,000.

24.    Accordingly, the amount-in-controversy requirement is satisfied.

**C.    The Diversity Requirement Is Satisfied**

25.    The diversity requirements for mass action removal have been satisfied. *See* 28 U.S.C. § 1332(d)(2)(A).    While diversity removal normally requires complete diversity between plaintiffs and defendants, for removal of a mass action, only "minimal diversity" is required—i.e., that at least one plaintiff be diverse from one defendant.  *See id.*  This requirement is readily satisfied here:  Plaintiff Josefina Allison, a citizen of California (Compl. ¶ 1), is diverse from Pfizer, a citizen of Delaware and New York.

26.    Accordingly, all the jurisdictional requirements of mass action removal are satisfied.

## II.    REMOVAL IS PROPER BECAUSE PLAINTIFFS' CLAIMS ARE SUBJECT TO TRADITIONAL DIVERSITY JURISDICTION

27.    The Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action between citizens of different States and/or foreign states, in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interests.  The amount in controversy is satisfied as to each Plaintiff for the reasons set forth in I.B above, and the complete diversity requirement is satisfied but for Plaintiffs' fraudulent joinder of McKesson.

### A.     Parties and Diversity of Citizenship

28.     Defendant McKesson is incorporated in Delaware and headquartered in California and is therefore a citizen of Delaware and California.  (*See* Compl. ¶ 76.)

29.     Defendant Pfizer is incorporated in Delaware and headquartered in New York and is therefore a citizen of Delaware and New York.

30.     The citizenship of fictitious defendants DOES 1-50 is disregarded for purposes of diversity.  28 U.S.C. § 1441(b)(1).

31.     Plaintiff Josefina Allison is a citizen of California.  (Compl. ¶ 1.)

32.     Plaintiff Loretta Bush is a citizen of Alabama.  (*Id.* ¶ 2.)

33.     Plaintiff Dorothy Caldwell is a citizen of Oklahoma .  (*Id.* ¶ 3.)

34.     Plaintiff Lori Canorro is a citizen of Pennsylvania.  (*Id.* ¶ 4.)

35.     Plaintiff Sandra Cardinal is a citizen of Colorado.  (*Id.* ¶ 5.)

36.     Plaintiff Judith Caskey is a citizen of Pennsylvania.  (*Id.* ¶ 6.)

37.     Plaintiff Patti Lee Caudle is a citizen of Oregon.  (*Id.* ¶ 7.)

38.     Plaintiff Caroline Cole is a citizen of Indiana.  (*Id.* ¶ 8.)

39.     Plaintiff Carolyn Coon is a citizen of Alabama.  (*Id.* ¶ 9.)

40.     Plaintiff Deloris Davis is a citizen of Colorado.  (*Id.* ¶ 10.)

41.     Plaintiff Donna Davis is a citizen of Pennsylvania.  (*Id.* ¶ 11.)

42.     Plaintiff Willie Mae Davis-Williams is a citizen of Illinois.  (*Id.* ¶ 12.)

43.     Plaintiff Anna Dixon is a citizen of Indiana.  (*Id.* ¶ 13.)

44.     Plaintiff Carolyn Dixon is a citizen of Arkansas.  (*Id.* ¶ 14.)

45.     Plaintiff Debbie Dunn is a citizen of Alabama.  (*Id.* ¶ 15.)

46.     Plaintiff Brenda Edwards is a citizen of Virginia.  (*Id.* ¶ 16.)

47.     Plaintiff Benedicta Espanol is a citizen of Pennsylvania.   (*Id.* ¶ 17.)

48.     Plaintiff Aurora Estrella is a citizen of California.  (*Id.* ¶ 18.)

49.     Plaintiff Teresa Ford is a citizen of Alabama.  (*Id.* ¶ 19.)

50.     Plaintiff Joyce Fuller is a citizen of Virginia.  (*Id.* ¶ 20.)

51.     Plaintiff Maria Garcia is a citizen of Kansas.  (*Id.* ¶ 21.)

52.     Plaintiff Gladys Jeanette Garner is a citizen of Georgia.  (*Id.* ¶ 22.)

53.     Plaintiff Patricia Garrett is a citizen of Alabama.  (*Id.* ¶ 23.)

54.     Plaintiff Linda Gray is a citizen of Pennsylvania.  (*Id.* ¶ 24.)

55.     Plaintiff Sharon Grover is a citizen of Texas.  (*Id.* ¶ 25.)

56.     Plaintiff Teressa Haines is a citizen of Texas.  (*Id.* ¶ 26.)

57.     Plaintiff Lisa Hegazy is a citizen of California.  (*Id.* ¶ 27.)

58.     Plaintiff Jackie Hill is a citizen of Georgia.  (*Id.* ¶ 28.)

59.     Plaintiff Marilyn Hill is a citizen of Nevada.  (*Id.* ¶ 29.)

60.     Plaintiff Christine Hinkle is a citizen of Oklahoma.  (*Id.* ¶ 30.)

61.     Plaintiff Margaret Hocker is a citizen of Pennsylvania.  (*Id.* ¶ 31.)

62.     Plaintiff Barbara Hopes is a citizen of Ohio.  (*Id.* ¶ 32.)

63.     Plaintiff Barbara Lee Hughes is a citizen of Georgia.  (*Id.* ¶ 33.)

64.     Plaintiff Jo Hughes is a citizen of Texas.  (*Id.* ¶ 34.)

65.     Plaintiff Sabrina Sue Johnson is a citizen of Oklahoma.  (*Id.* ¶ 35.)

66.     Plaintiff Geneva Jones is a citizen of Georgia.  (*Id.* ¶ 36.)

67.     Plaintiff Melissa Jones is a citizen of Ohio.  (*Id.* ¶ 37.)

68.     Plaintiff Barbara Kalember is a citizen of Arizona.  (*Id.* ¶ 38.)

69.     Plaintiff Elaine L. Key is a citizen of Virginia.  (*Id.* ¶ 39.)

70.     Plaintiff Aliscina Leach is a citizen of Alabama.  (*Id.* ¶ 40.)

71.     Plaintiff Betty Leyba is a citizen of Colorado.  (*Id.* ¶ 41.)

72.     Plaintiff Linda Linan is a citizen of California.  (*Id.* ¶ 42.)

73.     Plaintiff Sheila Martin is a citizen of Pennsylvania.  (*Id.* ¶ 43.)

74.     Plaintiff Katie Maye is a citizen of Alabama.  (*Id.* ¶ 44.)

75.     Plaintiff Edna Merrill is a citizen of Oklahoma.  (*Id.* ¶ 45.)

76.     Plaintiff Karen Mize is a citizen of Arizona.  (*Id.* ¶ 46.)

77.     Plaintiff Mary Ann Moore is a citizen of Alabama.  (*Id.* ¶ 47.)

78.     Plaintiff Adrena Muhammad is a citizen of Nevada.  (*Id.* ¶ 48.)

79.   Plaintiff Andrea Newton is a citizen of Arizona.  (*Id.* ¶ 49.)

80.   Plaintiff Marilyn Oyler is a citizen of Texas.  (*Id.* ¶ 50.)

81.   Plaintiff Rhoda Padilla is a citizen of Texas.  (*Id.* ¶ 51.)

82.   Plaintiff Pushpa Patel is a citizen of New Jersey.  (*Id.* ¶ 52.)

83.   Plaintiff Elizabeth Paxton is a citizen of Oregon.  (*Id.* ¶ 53.)

84.   Plaintiff Deborah Peña is a citizen of California.  (*Id.* ¶ 54.)

85.   Plaintiff Doris Perry is a citizen of California.  (*Id.* ¶ 55.)

86.   Plaintiff Kristin Petzold is a citizen of Kansas.  (*Id.* ¶ 56.)

87.   Plaintiff Ida Pizzi is a citizen of California.  (*Id.* ¶ 57.)

88.   Plaintiff Gwendolyn Reed is a citizen of Pennsylvania.  (*Id.* ¶ 58.)

89.   Plaintiff Dora Sabeda Chavira is a citizen of Texas.  (*Id.* ¶ 59.)

90.   Plaintiff Mary Seabaugh is a citizen of Georgia.  (*Id.* ¶ 60.)

91.   Plaintiff Ora Sherrell is a citizen of Ohio.  (*Id.* ¶ 61.)

92.   Plaintiff Joyce Shields is a citizen of California.  (*Id.* ¶ 62.)

93.   Plaintiff Ophelia Shillingford is a citizen of the Virgin Islands.  (*Id.* ¶ 63.)

94.   Plaintiff Gloria Siess is a citizen of California.  (*Id.* ¶ 64.)

95.   Plaintiff Rose Sinclair is a citizen of Pennsylvania.  (*Id.* ¶ 65.)

96.   Plaintiff Nancy Smith is a citizen of Ohio.  (*Id.* ¶ 66.)

97.   Plaintiff Mary Tolentino is a citizen of California.  (*Id.* ¶ 67.)

98.   Plaintiff Patricia Trotman is a citizen of Virginia.  (*Id.* ¶ 68.)

99.   Plaintiff Brenda Votta is a citizen of New Jersey.  (*Id.* ¶ 69.)

100.   Plaintiff Roberta Washington is a citizen of Alabama.  (*Id.* ¶ 70.)

101.   Plaintiff Linda White is a citizen of Oklahoma.  (*Id.* ¶ 71.)

102.   Plaintiff Tressia Wilkerson is a citizen of Alabama.  (*Id.* ¶ 72.)

103.   Plaintiff Linda Wooley is a citizen of Alabama.  (*Id.* ¶ 73.)

104.   Plaintiff Shayne Zepeda is a citizen of West Virginia.  (*Id.* ¶ 74.)

105.   Thus, the sole barrier to complete diversity is the California citizenship of McKesson, which may be disregarded due to fraudulent joinder.   Following dismissal of McKesson, this Court has traditional diversity jurisdiction over this action.

**B.    McKesson Is Fraudulently Joined**

106.   McKesson's presence in the case does not defeat diversity jurisdiction because it was fraudulently joined.   A non-forum defendant may remove an action where the forum defendant "[was] 'fraudulently' named or joined solely to defeat diversity jurisdiction."  *In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006).

107.   Under the fraudulent joinder doctrine, a court should disregard the citizenship of a defendant where, as here, there is "'no possibility that the plaintiff will be able to establish a cause of action in state court against the alleged sham defendant.'"  *Taylor v. Jeppesen DataPlan, Inc.*, 2010 U.S. Dist. LEXIS 106160, at *5 (N.D. Cal. Sept. 27, 2010) (quoting *Plute v. Roadway Package Sys.*, 141 F. Supp. 2d 1005, 1008 (N.D. Cal. 2001)); *BSD, Inc. v. Equilon Enters., LLC*, 2011 U.S. Dist. LEXIS 39905, at *15 (N.D. Cal. Mar. 31, 2011) (finding that defendant was fraudulently joined).   Non-diverse or forum defendants are fraudulently joined—and their presence in the lawsuit is thus ignored for purposes of determining the propriety of removal—where no viable cause of action has been stated against them. *See United Computer Sys., Inc. v. AT&T Corp.*, 298 F.3d 756, 761-62 (9th Cir. 2002); *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *TPS Utilicom Servs., Inc. v. AT&T Corp.*, 223 F. Supp. 2d 1089, 1100-01 (C.D. Cal. 2002); *see also Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (affirming district court's finding of fraudulent joinder and recognizing that a "reasonable" basis to predict that a plaintiff could prevail on his or her claims against the in-state defendants requires more than a "theoretical" basis); *Badon v. RJR Nabisco, Inc.*, 224 F.3d 382, 393 (5th Cir. 2000) (pursuant to the

fraudulent-joinder doctrine, a court should disregard the citizenship of an in-state defendant where, as here, "there is no reasonable basis for predicting that plaintiffs might establish liability . . . against the in-state defendants"). Here, Plaintiffs' claims against McKesson fail both as a matter of law and under the allegations of the Complaint.

108.    There is no possibility, based on the allegations in Plaintiffs' complaint, that Plaintiffs will be able to establish a cause of action against McKesson based on its alleged role in distributing Lipitor. As such, Plaintiffs' fraudulent joinder of McKesson does not prevent removal.

### 1.    Plaintiffs' Claims Against McKesson Fail as a Matter of Law

109.    McKesson is fraudulently joined because Plaintiffs' claims against it fail as a matter of law. Initially, Plaintiffs' claims against McKesson are barred by federal preemption.

110.    Although Plaintiffs assert numerous causes of action against McKesson, those claims all fundamentally allege that state law required McKesson to take some different action with respect to Lipitor—McKesson should have changed the product's warnings, or its design, or should have simply stopped selling the product. The Supreme Court's decisions in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), and *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013), show that McKesson cannot comply with these alleged requirements without violating federal law, and thus the claims against it are preempted.

111.    In *Mensing*, the Supreme Court held that claims challenging the warnings issued by generic drug defendants are preempted by the "duty of sameness" under the Hatch-Waxman amendments to the FDCA, which require that the warnings that accompany a generic prescription medication be the same as the branded version of the drug. *See* 131 S. Ct. at 2573-75. Because federal law "demanded that generic drug labels be the same at all times as the corresponding

brand-name drug labels," it was impossible for generic manufacturers to independently change the label to comply with alleged state-law duties, and the plaintiffs' claims were preempted. *Id.* at 2578.

112. In *Bartlett*, the Supreme Court held that *Mensing* also applied to claims challenging the design of generic medications. In analyzing preemption, the Supreme Court considered the three potential avenues through which a generic defendant could comply with state-law duties imposed by products liability claims: (1) change the product's warnings; (2) change its design; or (3) stop selling it. *See* 133 S. Ct. at 2473-78. The Court held that none of these avenues was wide enough to escape preemption—just as the duty of sameness bars generic defendants from making an independent labeling change, it precludes an independent design change, which is also practically impossible because a pharmaceutical product "is chemically incapable of being redesigned." *Id.* at 2475. Nor could the generic defendant's ability to "stop selling" its product defeat impossibility preemption, since that doctrine presumes an actor "is not required to cease acting altogether in order to avoid liability," and a contrary rule would render "impossibility pre-emption . . . 'all but meaningless.'" *Id.* at 2477 (quoting *Mensing*, 131 S. Ct. at 2579).

113. The dispositive practical impact of *Mensing* and *Bartlett* in the federal courts has been unmistakable. In the wake of those decisions, numerous courts of appeal, including the Ninth Circuit, have granted or affirmed dismissal of all products liability claims against generic defendants, frequently including the same causes of action that Plaintiffs assert here.[7]

---

[7] *See, e.g.*, *Gaeta ex rel. A.G. v. Perrigo Pharm. Co.*, 469 F. App'x 556 (9th Cir. 2012); *see also Drager v. PLIVA USA, Inc.*, 741 F.3d 470 (4th Cir. 2014); *Morris v. PLIVA, Inc.*, 713 F.3d 774 (5th Cir. 2013); *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 383 (6th Cir. 2013); *Mensing v. Wyeth, Inc.*, 658 F.3d 867 (8th Cir. 2011); *Schrock v. Wyeth, Inc.*, 727 F.3d 1273, 1276 (10th Cir. 2013); *Guarino v. Wyeth,*

*(cont'd)*

114.   *Mensing* and *Bartlett* apply equally to bar claims against distributors such as McKesson, who have even less control over their products than generic defendants.  Indeed, McKesson is not simply required to use the same labeling or design as the branded medication, it is *prohibited* from making any changes to the labeling used by the manufacturer.  *See* 21 C.F.R. § 314.70 (limiting label change authority to approved applicants, who are manufacturers).  Were McKesson to change the FDA-approved labeling of these products, it would render them misbranded under federal law.  *See* 21 U.S.C. § 352.  Nor could McKesson change the design of those medications, as this would result in an unapproved new drug.  *Id.* § 321(p)(1); *see also Bartlett*, 133 S. Ct. at 2475 (finding design change impossible because "altered chemical would be a new drug that would require its own NDA to be marketed in interstate commerce").  Distributing a misbranded product or unapproved new drug would render McKesson liable for fines and other penalties under federal law.  *See* 21 U.S.C. §§ 331(a), (d), 333(a).  Nor can Plaintiffs charge that McKesson should have stopped selling Lipitor—that rationale fails just as it did in *Bartlett*, for it "would render impossibility pre-emption a dead letter and work a revolution in [the Supreme] Court's pre-emption case law."  133 S. Ct. at 2470.  As in *Bartlett*, none of the avenues for complying with state law is available to McKesson.[8]

---

*(cont'd from previous page)*
*LLC*, 719 F.3d 1245 (11th Cir. 2013).

[8]   In *Bartlett*, the Supreme Court also rejected the plaintiffs' arguments that the operative New Hampshire law imposed an "absolute liability" regime that simply required manufacturers to pay compensation to individuals injured by their products.  New Hampshire followed the Restatement (Second) of Torts, which was not purely compensatory, but "impose[d] . . . substantive duties on manufacturers" that conflicted with federal law.  *Bartlett*, 133 S. Ct. at 2473-74.  That argument fails not only under New Hampshire law, but under the law of every state, none of which has adopted an "absolute liability" regime.  *See* R. Kaye, Am. L. of Prods. Liab. 3d § 16.5 (2013) (collecting cases); *Daly v. Gen. Motors Corp.*, 575 P.2d 1162, 1166

*(cont'd)*

115.   Thus, because McKesson "could not 'independently do under federal law what state law [allegedly] requires of it,'" courts have recognized that claims against distributors of prescription medications are barred by impossibility preemption. *In re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, 2012 WL 181411, at *4 (D.N.J. Jan. 17, 2012) (citation omitted); *accord Stevens v. Cmty. Health Care, Inc.*, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011). Liability against McKesson is foreclosed as a matter of law, and it is fraudulently joined.[9]

116.   In addition, there is no possibility that Plaintiffs can prevail against McKesson under the home state law that governs their claims. *See Boaz v. Boyle & Co.*, 46 Cal. Rptr. 2d 888, 896 (Cal. Ct. App. 1995). Many states reject liability against distributors as a matter of common law or of statute, *see, e.g.*, Colo. Rev. Stat. § 13–21–402(1); *Walker v. Decora, Inc.*, 471 S.W.2d 778, 784 (Tenn. 1971), and Plaintiffs from those states thus cannot state a claim against McKesson. Thus,

---
*(cont'd from previous page)*

(Cal. 1978) ("From its inception, however, strict liability has never been, and is not now, *absolute* liability.").

[9]   Federal courts may and should consider defenses such as preemption as a basis for fraudulent joinder. Indeed, the Ninth Circuit in *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313 (9th Cir. 1998), recognized that fraudulent joinder can be established through an affirmative defense—there, the statute of limitations—provided it is not exogenous to the cause of action. *Id.* at 1319. Here, preemption, like the statute of limitations, is non-exogenous; California courts apply it "through the medium of demurrer," *id.* at 1320, "even though, technically, [it] is not part of the cause of action itself." *Id.* at 1319; *see also, e.g.*, *Teva Pharm. USA, Inc. v. Superior Court*, 158 Cal. Rptr. 3d 150, 153 (Cal. Ct. App. 2013) (applying preemption on demurrer). Nor does the use of preemption to establish fraudulent joinder violate the common defense rule, since it does not "require[] an inquiry into the merits of the plaintiff's claims against *all* defendants." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1045 (9th Cir. 2009) (emphasis added). Indeed, the Supreme Court has specifically held the impossibility preemption defense generally fails as to brand-name defendants like Pfizer. *See Wyeth v. Levine*, 555 U.S. 555 (2009).

1  operative state law compels the conclusion that McKesson is fraudulently joined as
2  to citizens of states that prohibit distributor liability, and its California citizenship is
3  no bar to diversity jurisdiction over those actions.

4  **2.    Plaintiffs' Claims Against McKesson Are Inadequately Pled**

5  117.   In addition, McKesson is fraudulently joined because Plaintiffs have
6  failed to assert sufficient factual allegations against it.  *See, e.g.*, *Brown v. Allstate*
7  *Ins. Co.*, 17 F. Supp. 2d 1134, 1137 (S.D. Cal. 1998) (finding in-state defendants
8  fraudulently joined where "no material allegations against [the in-state defendants]
9  are made"); *Lyons v. Am. Tobacco Co.*, 1997 WL 809677, at *5 (S.D. Ala. Sept. 30,
10 1997) (holding that there is "no better admission of fraudulent joinder of [the
11 resident distributor defendants]" than the failure of the plaintiff "to set forth any
12 specific factual allegations" against them).

13 118.   When making the fraudulent joinder determination, a court must only
14 consider the allegations pled in the complaint as of the time of removal and should
15 not speculate about facts or claims that plaintiff failed to plead.  *See Poulos v. Naas*
16 *Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992).

17 119.   In evaluating whether a defendant is fraudulently joined for purposes of
18 removal, this Court applies federal, rather than state, pleading standards under an
19 analysis "'akin to that of a Rule 12(b)(6) motion to dismiss.'"  *Johnson v. DePuy*
20 *Orthopaedics, Inc.*, 2012 U.S. Dist. LEXIS 74450, at *5-7 (N.D. Ohio May 30, 2012)
21 (citation omitted) (observing that "'[t]he [ ] [federal] rules apply to a civil action
22 after it has been removed from a state court'" and "pending a resolution of the
23 district court's jurisdiction" and concluding that "Plaintiffs' arguments regarding
24 application of Kentucky's pleading standards are without merit"); *see Isaacs v.*
25 *Broido*, 358 F. App'x 874, 877 (9th Cir. 2009) (noting that "the Rule 12(b)(6)
26 inquiry and the fraudulent joinder inquiry substantially overlap on the issue of
27 failure to state a claim" (citing *Sessions v. Chrysler Corp.*, 517 F.2d 759, 761 (9th

28

1  Cir. 1975))); *Sessions*, 517 F.2d at 760 (applying "the standards for dismissal under
2  the Federal Rules" in a fraudulent joinder analysis).

3      120.   Thus, in order to state a proper claim against McKesson, Plaintiffs must
4  allege "enough facts to state a claim to relief that is plausible on its face" and allow
5  the court to draw the reasonable inference that the defendant is liable for the
6  misconduct alleged. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Legal
7  conclusions and threadbare recitals of elements, supported by mere conclusion,
8  simply do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This Court is
9  "'not bound to accept as true a legal conclusion couched as a factual allegation.'"
10  *Twombly*, 550 U.S. at 555 (citation omitted).  Rather, Federal Rule of Civil
11  Procedure 8 "'contemplate[s] the statement of circumstances, occurrences, and
12  events in support of the claim presented.'"  *Id.* at 555 n.3 (citation omitted).
13  Pleadings such as Plaintiffs' claims against McKesson here that fail to set forth
14  factual allegations to support asserted legal conclusions should be dismissed for
15  failure to state a claim.  *Id.* at 555; *see also Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . .
16  does not unlock the doors of discovery for a plaintiff armed with nothing more than
17  conclusions.").

18      121.   Here, Plaintiffs' only relevant allegation concerning the conduct of
19  McKesson is that it "touts itself as . . . the largest pharmaceutical distributor in North
20  America distributing one-third of the medications used daily in North America."
21  (Compl. ¶ 76.)  Yet since McKesson is only one of several national distributors of
22  prescription medications, such facts, even if true, are insufficient to satisfy
23  Plaintiffs' burden to plead facts showing that McKesson actually distributed the
24  Lipitor used by Plaintiffs, a fact that the Complaint improperly pleads only on
25  "information and belief."  (*Id.* ¶ 86.)  Notably, Plaintiffs do not even identify the
26  pharmacy where Plaintiffs' Lipitor prescriptions were allegedly filled.  Thus,

27

28

Plaintiffs fail to satisfy their burden of plausibly pleading that McKesson distributed the Lipitor that Plaintiffs ingested.

122.   Moreover, Plaintiffs assert no specific allegations or facts against McKesson to maintain any of their causes of actions against it.  Plaintiffs' theory of recovery—that the product allegedly was defective or mislabeled—has nothing to do with McKesson's role as a distributor of the product.  Plaintiffs do not assert any specific facts connecting McKesson to any of the individual claims asserted in their Complaint.  *See Camara v. Bayer Corp.*, 2010 WL 902780, at *3 (N.D. Cal. Mar. 9, 2010) (staying case pending transfer to MDL and declining to decide motion to remand because plaintiff's complaint failed "to clearly explain the role of McKesson in the injury of these specific plaintiffs and leaves a suspicion that McKesson could have been added to defeat diversity removal"); *see also Wendell v. Johnson & Johnson*, 2012 WL 3042302, at *7 (N.D. Cal. July 25, 2012) ("A plaintiff asserting causes of action for failure to warn must prove not only that no warning was provided or that the warning was inadequate, but also that the inadequacy or absence of a warning caused the plaintiff's injury." (citing *Plummer v. Lederle Labs.*, 819 F.2d 349, 358 (2d Cir. 1987) (applying California law))).  Plaintiffs' allegations simply do not meet the *Iqbal/Twombly* pleading standard.

123.   In addition, Plaintiffs' fraud-based claims against McKesson fail because Plaintiffs:  (1) do not identify a single statement made by McKesson that was allegedly deceptive; (2) do not identify a single act by which McKesson allegedly concealed a material fact that it was bound to disclose; and (3) fail to establish any connection between any actions by McKesson and the Plaintiff's use of Lipitor that could possibly satisfy the reliance/causation elements of their fraud-based claims.

124.   Importantly, Plaintiffs must allege each element of each fraud-based claim with the particularity required by Federal Rule of Civil Procedure 9(b).  *See,*

1    *e.g.*, *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal.

2    2003) ("It is well-established in the Ninth Circuit that both claims for fraud and

3    negligent misrepresentation must meet Rule 9(b)'s particularity requirements.");

4    *Young v. Fluorotronics, Inc.*, 2010 U.S. Dist. LEXIS 117362, at *23 (S.D. Cal. Nov.

5    3, 2010) (quoting *Neilson*, 290 F. Supp. 2d at 1141); *In re Verisign, Inc., Derivative*

6    *Litig.*, 531 F. Supp. 2d 1173, 1219 (N.D. Cal. 2007) (dismissing constructive-fraud

7    claims because, *inter alia*, "plaintiffs have not alleged constructive fraud with

8    particularity," as required under Rule 9(b)). Bald allegations of fraud cannot defeat

9    diversity jurisdiction. *See, e.g.*, *Fisher v. Paul Revere Ins. Grp.*, 55 F. App'x 412,

10    414 (9th Cir. 2002) (affirming trial court's determination that non-diverse defendant

11    had been fraudulently joined and refusal to remand case to state court where the

12    plaintiff "did not specifically allege facts that would support any of the elements of

13    deceit" with regard to the non-diverse defendant, as required under Rule 9(b)); *In re*

14    *Rezulin Prods. Liab. Litig.*, 133 F. Supp. 2d at 283 (finding defendant sales

15    representatives fraudulently joined because, *inter alia*, plaintiffs did not meet Rule

16    9(b)'s requirements where they failed to allege "the time and place of particular

17    representations").

18        125. Here, Plaintiffs have not identified any specific statements that

19    McKesson allegedly made to any Plaintiff regarding Lipitor. Nor have Plaintiffs

20    alleged that any Plaintiff or her physicians or healthcare providers relied on any such

21    statements or any other conduct by McKesson regarding Lipitor, much less with the

22    particularity required by Rule 9(b). For both of these reasons, there is no

23    "possibility" that Plaintiffs can recover against McKesson on their fraud-based

24    claims. *See TPS Utilicom*, 223 F. Supp. 2d at 1102-03 (denying motion to remand

25    and granting motion to dismiss UCL claim where the complaint was "wholly

26    deficient" because it "contain[ed] no factual allegation of factual basis" about any

27    "'unlawful, unfair or fraudulent business *act* or *practice*'" by either resident

28

defendant (citation omitted)); *Aronis v. Merck & Co.*, 2005 WL 5518485, at *1 (E.D. Cal. May 3, 2005) (finding fraudulent joinder of McKesson where plaintiff "alleg[ed] that McKesson is a major distributor of [the allegedly defective medicine]" but "d[id] not allege that McKesson contributed in any way to her injuries"; "[t]o state a claim against a defendant, a plaintiff must allege a causal connection between the injury and the conduct of that defendant").

126.    Further, the fact that Plaintiffs' legal allegations are targeted at "Defendants" generally, rather than McKesson in particular, demonstrates that McKesson was fraudulently joined as a defendant.   In their causes of action, Plaintiffs make only broad, collective, and conclusory claims against a group generically described as "Defendants," lumping McKesson together with Pfizer. (*See* Compl. ¶¶ 133-182.)   As numerous courts have concluded, the fact that all of Plaintiffs' legal allegations are targeted at "Defendants" generally, rather than McKesson in particular, reveals that it was fraudulently joined.  *See Shah v. Wyeth Pharm., Inc.*, 2005 WL 6731641, at *3 (C.D. Cal. Jan. 18, 2005) ("[A]llegations against 'defendants' collectively are insufficient to warrant remand, especially when Plaintiffs fail to allege any 'particular or specific activity' on the part of each of the non-diverse defendants." (citation omitted)); *see also Gomes v. Michaels Stores, Inc.*, 2006 U.S. Dist. LEXIS 81354, at *4-7 (E.D. Cal. Oct. 26, 2006) (dismissing non-diverse defendant and refusing to remand case where plaintiff generally "state[d] that all defendants' acts 'were performed partly within and partly outside the course and scope of their authority and employment'" but did not include any specific allegations about the non-diverse defendant (citing complaint)); *Bennett v. Allstate Ins. Co.*, 753 F. Supp. 299, 301 (N.D. Cal. 1990) (denying motion to remand because, *inter alia*, plaintiff's complaint made "no attempt" to "differentiate between the conduct" of the defendants).

127. For all these reasons, McKesson is fraudulently joined, and its citizenship must be disregarded for jurisdictional purposes.

### III. PFIZER HAS SATISFIED THE PROCEDURAL REQUIREMENTS FOR REMOVAL

128. This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) because it is filed within 30 days of service of the summons and Complaint upon Pfizer, which occurred on October 31, 2016.

129. For purposes of mass action removal, McKesson's consent to removal is not required. *See* 28 U.S.C. § 1453(b). For purposes of traditional diversity jurisdiction, McKesson is not required to join in or consent to removal since it is alleged to be fraudulently joined. *See* 28 U.S.C. § 1446(b)(2)(A).

130. For purposes of mass action removal, McKesson's forum citizenship is not a bar to removal. *See* 28 U.S.C. § 1453(b). For purposes of traditional diversity jurisdiction, McKesson's forum citizenship is not a bar to removal since it is alleged to be fraudulently joined. *See* 28 U.S.C. § 1441(b)(2).

131. This action, filed in the California Superior Court of Los Angeles County, is being removed to the district and division embracing the place where the action is pending. *See* 28 U.S.C. § 1441(a).

132. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings and orders served on the Removing Defendant, which papers include the Complaint, are attached collectively as Exhibit A.

133. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Superior Court of the County of Los Angeles.

WHEREFORE, the Removing Defendant respectfully removes this action from the Superior Court of the County of Los Angeles, in the State of California, bearing number BC638755, to this Court.

Dated:  November 22, 2016

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN LLP

By:   /s/ Marshall M. Searcy
        Marshall M. Searcy III

*Attorneys for Defendant Pfizer Inc.*